1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE NOOKSACK INDIAN TRIBE,<br><br>                Plaintiffs,<br><br>v.<br><br>KEVIN "JACK" HAUGRUD, in his official capacity as Acting Secretary of the Interior; the U.S. DEPARTMENT OF THE INTERIOR; MICHAEL S. BLACK, in his official capacity as Acting Assistant Secretary – Indian Affairs; WELDON "BRUCE" LOUDERMILK, in his official capacity as Director, Bureau of Indian Affairs, Department of the Interior; STANLEY M. SPEAKS, in his official capacity as Regional Director, Northwest Region, Bureau of Indian Affairs; MARCELLA L. TETERS, in her official capacity as Superintendent, Puget Sound Agency, Bureau of Indian Affairs; TIMOTHY BROWN, in his official capacity as Senior Regional Awarding Official for the Bureau of Indian Affairs, Northwest Region; and THE UNITED STATES OF AMERICA,<br><br>                Defendants. | Case No. 2:17-cv-219<br><br>COMPLAINT FOR INJUNCTION, WRIT OF MANDAMUS, DECLARATORY JUDGMENT, AND OTHER RELIEF |

For its complaint Plaintiffs, the Nooksack Indian Tribe (the "Tribe"), by and through

its undersigned counsel, alleges as follows:

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

## I.      NATURE OF THE CASE

1.      This is an action to compel the defendants to fully fund contracts awarded to the Tribe under the Indian Self-Determination and Education Assistance Act, Public Law 93-638.  Defendants have a non-discretionary duty owed to the Tribe to provide required funding for the awarded contracts and have failed and refused to perform those duties.

2.      This is also an action for a declaration by this Court that the Nooksack Tribal Council was at all times duly and validly elected pursuant to the Tribe's Constitution and By-Laws and the opinions of the Nooksack Tribal Court, and possessed a quorum under Nooksack law to conduct Tribal business; and that the current Nooksack Tribal Council was duly and validly elected pursuant to the Tribe's Constitution and must be recognized by the defendants as the governing body of the Nooksack Indian Tribe.

3.      Finally, this is an action to compel the defendants to cease and desist in their arbitrary and capricious refusal to recognize the Nooksack Tribal Council as the governing body of the Nooksack Tribe, to take all necessary steps to withdraw the erroneous, arbitrary and capricious determination of former Principal Deputy Assistant Secretary Lawrence Roberts that the Tribe lacks a quorum to conduct tribal business, and to notify all agencies and persons with whom Mr. Roberts' determination was shared that the determination was erroneous and without force or effect.

## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims asserted in this matter pursuant to 25 U.S.C. §5331(a) (Indian Self-Determination and Education Assistance Act contract disputes and claims), 28 U.S.C. §1331 (federal question), 28 U.S.C. §1361 (mandamus), 28 U.S.C. §1651(a) (All Writs Act), 28 U.S.C. §2201 (declaratory relief), 28 U.S.C. §2202 (further relief), and 5 U.S.C. §702 (Administrative Procedures Act).

5.      This Court has original jurisdiction under 25 U.S.C. §5331(a) over any civil action or claim against the appropriate Secretary arising under the Indian Self-Determination

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

and Education Assistance Act  and over any civil action or claim against the Secretary for money damages arising under contracts authorized by the Indian Self-Determination and Education Assistance Act.  In an action brought pursuant to 25 U.S.C. §5331(a), the district courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this Act or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this Act or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding or to compel the Secretary to award and fund an approved self-determination contract).

6.     This Court has jurisdiction under 28 U.S.C. §1331 because the case involves questions arising under the Constitution, laws, and regulations of the United States, specifically: (a) the Indian Self-Determination and Education Assistance Act, Public Law 93-638, as amended 25 U.S.C. §§5301 et seq (hereafter "ISDA"), in particular §5331(a) of the ISDA; (b) the (b) the Administrative Procedures Act, 5 U.S.C. §§701-706; and (c) 25 U.S.C. § 2.

7.     This Court has jurisdiction under 28 U.S.C. §1361 (mandamus) to compel the defendants, as officers and employees of the United States or any agency thereof to perform contractual duties owed to the Tribe.

8.     This Court has jurisdiction under the All Writs Act, 28 U.S.C. §1651(a), to order the Secretary of the Interior to sequester funds sufficient to pay the Tribe the contract funds that have been awarded but not funded, to prevent the defendants from obligating those funds for other purposes and to prevent those funds from lapsing to the Treasury while this action is pending.

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

9.     This Court has jurisdiction under 28 U.S.C. § 2201 to declare the rights and other legal relations of the Tribe against the defendants, and under 28 U.S.C. § 2202 to grant the Tribe further relief based on the Court's declaration of the Tribe's rights.

10.     This Court has jurisdiction under 5 U.S.C. § 702 because the Tribe has suffered a legal wrong by action of the defendants within the meaning of a relevant statute or rule, and the action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and the defendants' action failed to meet statutory, procedural or constitutional requirements.

11.     Venue is properly laid in the Western District of Seattle under 28 U.S.C. §1391(e), because the Tribe's reservation, its administrative offices, and the programs that are funded under 638 contracts, which have been deprived of funds that were awarded under such contracts, are located in this district.

12.     Exhaustion of administrative remedies is not required pursuant to 25 U.S.C. §§5321(b)(3), 5331(a), and because administrative review would be futile as a result of a "preannounced decision by the final administrative decision-maker" or "objective and undisputed evidence of administrative bias." *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988).

13.     The United States has consented for it and its officers to be sued pursuant to 5 U.S.C. §702 and 25 U.S.C. §5331(a).

### III.     PARTIES

14.     The Tribe is a federally recognized Indian tribe, organized under the Indian Reorganization Act of June 18, 1934 and the Constitution and By-Laws of the Tribe, with a reservation in northwestern Washington, near the Canadian border.  The Tribal Council is the governing body of the Tribe, duly elected pursuant to Tribal law and authorized under the Tribe's Constitution to prosecute claims on the Tribe's behalf.  Art. VI, Sec. 1(c).

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 4

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

1    15.    Defendant Kevin "Jack" Haugrud is the Acting Secretary of the Interior and is

2    charged by law with responsibility for implementing the ISDA.  As such, he was specifically

3    charged with entering into self-determination contracts on behalf of the United States under

4    the ISDA.  He is sued in his official capacity.

5    16.    Defendant U.S. Department of Interior is a federal cabinet agency responsible

6    for honoring the United States' trust responsibilities and special commitments to Indian

7    Tribes, including but not limited to funding compacts and contracts to support natural

8    resource education, law enforcement, and social service programs that are delivered by

9    tribes.  The Bureau of Indian Affairs is an agency within the Department of Interior,

10   responsible for fulfilling the United States' trust responsibility to Indian Tribes, supporting

11   tribal self-determination and self-governance, and funding and managing self-determination

12   contracts on behalf of the United States under the ISDA.

13   17.    Michael Black is the Acting Assistant Secretary – Indian Affairs and the

14   ranking executive official of the Bureau of Indian Affairs, charged with carrying out the

15   Department's responsibilities with respect to American Indians and Indian Tribes.  He is

16   sued in his official capacity.

17   18.    Lawrence S. Roberts was formerly the Principal Deputy Assistant Secretary –

18   Indian Affairs in the Department of the Interior and the ranking executive official of the

19   Bureau of Indian Affairs, because the Assistant Secretary – Indian Affairs position was

20   vacant.  His acts and omissions as alleged in this complaint are attributable to the Department

21   of Interior.

22   19.    Defendant Weldon "Bruce" Loudermilk is the Director of the Bureau of

23   Indian Affairs, charged with carrying out the Bureau's responsibilities with respect to

24   American Indians and Indian Tribes.  He is sued in his official capacity.

25   20.    Defendant Stanley M. Speaks is the Regional Director of the Northwest

26   Region of the Bureau of Indian Affairs, Department of the Interior.  As such, he is the

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 5

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

principal official charged with carrying out the Bureau of Indian Affairs' responsibilities in the Northwest Region, the region in which the Tribe is located.  He is sued in his official capacity.

21.     Defendant Marcella Teters is the Superintendent of the Puget Sound Agency, a division of the Northwest Region of the Bureau of Indian Affairs.  As such, she is charged with carrying out the Bureau of Indian Affairs' responsibilities to Indian tribes within the geographic region served by the Puget Sound Agency, which includes the Tribe.  She is sued in her official capacity.

22.     Defendant Timothy Brown is the Senior Regional Awarding Official for the Bureau of Indian Affairs, Northwest Region.  As such, he was responsible for awarding and administering 638 contracts and grants to tribes within the Northwest Region, including the Tribe.  He is sued in his official capacity.

23.     The United States is a party to every self-determination contract pursuant to 25 U.S.C. §5331(c), model agreement section 1(a)(1).

## IV.     FACTS

### A.     Self-Determination Contracts

24.     The Indian Self-Determination and Education Assistance Act of 1975, Pub. L. 93-638 ("ISDA"), as amended, gave Indian tribes the authority to contract with the Federal government to operate programs serving their tribal members and other eligible persons.

25.     Under the ISDA, "a tribe may request the Secretary of Interior to enter into a self-determination contract 'to plan, conduct, and administer programs or portions thereof, including construction programs.'" *Arizona Dept. of Revenue v. Blaze Const. Co., Inc.*, 526 U.S. 32, 38, 119 S. Ct. 957, 143 L. Ed. 2d 27 (1999) (*quoting* ISDA, 25 U.S.C. § 450f(a)(1), transferred to 28 U.S.C. §5321(a)(1)). "Where a tribe enters into such a contract, it assumes greater responsibility over the management of the federal funds and the operation of certain federal programs." *Id.*

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 6

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

26.     The Secretary is directed upon request of a Tribe to enter into self-determination contracts with a tribal organization. 25 U.S.C. §5321(a)(1 ). Upon receipt of a proposal by a tribal organization, such as plaintiff, for an ISDA contract "**the Secretary shall**, within ninety days after receipt of the proposal, approve the proposal and award the contract unless the Secretary provides written notification to the applicant that contains a specific finding that clearly demonstrates [one of the statutory grounds for declining approval] ..." 25 U.S.C. § 5321(2) [emphasis added].

27.     Since at least 2007, the Tribe has been a party to a number of self-determination or so-called 638 contracts with the Department of Interior, Bureau of Indian Affairs entered into pursuant to the ISDA.  A complete list of the Tribe's 638 contracts is appended hereto as **Exhibit A**.

28.     Under the terms of these contracts, the defendants fund the Tribe to provide programs, functions, services, or activities of the Department of Interior for the benefit of Indians because of their status as Indians.  The Tribe's 638 contracts are administered by the Northwest Regional Office of the BIA and defendant Timothy Brown is the Senior Awarding Officer who releases awarded 638 funds to the Tribe.

29.     The Tribe has at all times fully performed its obligations under the contracts, and satisfied periodic audits conducted by various federal parties to ensure compliance with 638 contract requirements.

**B.      Disenrollment Dispute**

30.     The eligibility criteria for membership of the Nooksack Indian Tribe is identified in the Tribe's Constitution.  Art. II, Sec. 1.  Pursuant to the Tribe's Constitution, the Tribal Council is empowered to enact an ordinance concerning future membership in the Tribe, adoption into the Tribe, and loss of membership, subject to the approval of the Secretary of Interior.  Art. II, Sec. 2.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

31.     On June 21, 2013, in a Secretarial election called for that purpose, Nooksack voters approved a change to the Nooksack Constitution, deleting Article II, Section 1(H), which had permitted the membership in the Tribe of individuals who were at least one fourth (1/4) degree Indian blood and could prove Nooksack ancestry to any degree.

32.     When that section of the Constitution was removed by voters, a corresponding section of the Tribe's enrollment ordinance, Part 63.01.001, Section 1(h) then violated the Constitution and required amendment.

33.     Individuals subject to disenrollment challenged resolutions the Tribal Council adopted regarding disenrollment, the Secretarial election, the related constitutional amendment, and the Tribe's enrollment code, Title 63, Nooksack Tribal Court. The Nooksack Court of Appeals upheld Resolution No. 13-02, Title 63, Resolution No. 13-38, the related constitutional amendment.

34.     On August 8, 2013, the Tribal Council passed Resolution No. 13-111, which clarified how Council meetings on disenrollment would be organized and established procedures for disenrollment. Again, certain potential disenrollees requested injunctive relief and challenged the procedures as violating their due process rights. The Nooksack Tribal Court of Appeals upheld the procedures in Resolution No. 13-111, finding that they comported with due process, but also held that the procedures were rules requiring Secretarial approval under Article II, § 2 of the Nooksack Constitution.

35.     On October 10, 2014, the Nooksack Tribal Council passed Resolution No. 14-112, which amended Title 63 to include the disenrollment procedures that had been approved by the Nooksack Tribal Court of Appeals.  The Tribal Council submitted its amended Enrollment Ordinance to the Puget Sound Agency's Acting Superintendent, acting under Secretary of Interior designated authority, for approval.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

36.     On October 24, 2014, the Acting Superintendent, Puget Sound Agency, reviewed and approved amended Title 63.  That decision was affirmed by the Acting Northwest Regional Director on January 7, 2015.

37.     On February 3, 2015, various individuals subject to disenrollment appealed this determination to the Interior Board of Indian Appeals (IBIA) as well as the Regional Director.  *Roberts v. Northwest Regional Director*, IBIA 15-072.

38.     At about the same time, the Tribe requested that the Regional Director give its decision to approve its Enrollment Ordinance immediate effect under 25 C.F.R. § 2.6.  The Regional Director declined the Tribe's request to give the Ordinance immediate effect and after several months of briefing, the IBIA dismissed the appeal in order to enable the Regional Director to re-address the merits of the claimants' appeal.  Order Docketing and Dismissing Appeal, *Roberts v. Northwest Regional Director*, IBIA 15-072 (May 8, 2015).

39.     On July 9, 2015, the IBIA vacated the Regional Director's decision and remanded it the Regional Director for consideration of the appeal from the Superintendent's decision approving the ordinance. *Two Hundred and Seventy-One Enrolled Nooksak [sic] Indians v. Northwest Regional Director, Bureau of Indian Affairs*, Docket No. IBIA 15-063.

40.     On remand, the Acting Regional Director issued a decision on November 17, 2015 affirmed the Superintendent' decision approving the Tribe's enrollment ordinance.

41.     On November 23, 2015, two individuals subject to disenrollment appealed the decision to the IBIA.  *St. Germain v. Acting Northwest Regional Director*, IBIA 16-022.  The briefing was concluded and the matter submitted to the IBIA for its decision in May, 2016.  The IBIA has not yet rendered its decision, despite the passage of nine months.

42.     The Tribe had been scheduled to conduct a general election in March, 2016 to fill three council seats for which terms were expiring.  The Tribe delayed the election, and the three Council members retained their seats as holdovers pending the election of their replacements, consistent with Nooksack law.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

43.     Between November 10, 2016 and November 22, 2016, the Nooksack Tribe disenrolled 289 individuals who failed to demonstrate legally sufficient blood connections to the Tribe.  The Tribe carried out the disenrollment proceedings using the procedures that had been approved by both the Nooksack Tribal Court of Appeals and the Secretary (through the Area Superintendent and the Regional Director).

44.     The United States Supreme Court has held that "[a] tribe's right to define its own membership for tribal purposes and has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72. n. 32 (1978).  A tribe's ability to determine its membership is a sovereign internal right and should not be interfered with by the federal government.  The Tribe's November 22, 2016 disenrollments were the exercise of the Tribe's right to define its own membership for tribal purposes, without interference by the federal government.

**C.     The Defendants Withheld Already-Awarded 638 Funds without Notice Based on an Erroneous and Unfounded Determination by Lawrence Roberts**

45.     In approximately June, 2016, the Department, acting through defendant Brown, and without notice to the Tribe or an opportunity for the Tribe to be heard, failed or refused to fund the Tribe's distribution of its previously-approved 638 contract funds.

46.     In a series of letters dated October 17, 2016, November 14, 2016, and December 23, 2016 by then-Principal Deputy Assistant Secretary Roberts, the then-ranking executive official of the Bureau of Indian Affairs, Roberts erroneously asserted, on behalf of the United States, that the Tribal Council then in office lacked a quorum under Nooksack law to conduct Tribal business.

47.     Roberts' letters, which constitute the development of a Federal policy that had tribal implications, were issued without prior consultation with the Tribe in violation of Executive Order 13175.

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 10

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

48.     None of Roberts' letters acknowledged that the BIA had already wrongfully withheld previously-authorized 638 contract funds, and thus the defendants were already in violation of the ISDA and its implementing regulations.

49.     Roberts asserted that the Department of Interior would only recognize those actions taken by the Tribal Council prior to March 2016 (more than 6 months prior to the date of his letter), the last point at which he incorrectly contended that a quorum existed, and would not recognize any actions taken since that time because of the alleged lack of a quorum.

50.     Roberts also asserted that "until a Council is seated through an election consistent with tribal law and the decisions of the Northwest Intertribal Court System," the Department of Interior would not recognize the Tribe's primary and general tribal election to fill the very seats Roberts erroneously claimed were vacant.

51.     In his October 17, 2016 letter Roberts stated:

> I want to be clear that the Department is not interpreting the Tribe's Constitution or interfering in internal tribal matters. The Department fully respects tribal sovereignty and tribal law. Rather, we are underscoring that pursuant to our government-to-government relationship between the United States and the Nooksack Tribe, we will only recognize action taken in accordance with the Tribe's Constitution and Bylaws.

52.     Roberts' statement is demonstrably false because his decision does, indeed, interpret the Tribe's Constitution and interfere with internal tribal matters.  Moreover, his conclusion that the Tribal Council lacked a quorum was entirely contrary to established Nooksack Law.

53.     Roberts' conclusion is contrary to law because he has failed to provide a reasoned explanation, and the record belies his conclusion.  *See Petroleum Communications, Inc. v. F.C.C.*, 22 F.3d 1164, 1172 (D.C. Cir.1994) (*citing American Tel. & Tel. Co. v. F.C.C.*, 974 F.2d 1351 (D.C. Cir.1992)).

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 11

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

**D.     The Nooksack Tribal Council Was at All Times Duly-Elected and Validly Governing the Nooksack Indian Tribe**

54.     The governing body of the Nooksack Indian Tribe is the Tribal Council, elected by the voters.  Art. III, Sec. 1, Const.  The Council is composed of eight (8) persons. Art. III, Sec. 2, Const.  All Council members govern for four (4) year terms; however, the actual commencement and expiration dates of the terms are not identified within the Constitution.  Art. III, Sec. 4.  In the event of an expiration of a four (4) year term, no explicit provision exists as to the status of a council seat – whether it becomes vacant or whether the previously seated member becomes a holdover.  *Id*.

55.     The composition of the Nooksack Tribal governing body is a matter of internal tribal concern and an inherent and exclusive power held by the Tribe.  Federal interference over matters of internal tribal concern is generally prohibited.  It is IBIA policy that "under the doctrines of tribal sovereignty and self-determination, a tribe has the right initially to interpret its own governing documents in resolving internal disputes, and the Department must give deference to a tribe's reasonable interpretation of its own laws." *United Keetoowah Band of Cherokee Indians in Oklahoma v. Muskogee Area Director*, 22 IBIA 75, 80 (June 4, 1992).

56.     Since 1997, The Nooksack Tribal Court has concluded that Nooksack tribal law recognized "holdover" status of councilmembers pending an election.

57.     Numerous times in Nooksack history, councilmembers have continued to hold an elected office in "holdover" status, while an election was held, an election result was challenged, or while the new councilmember waited to be sworn in.  *See generally, Campion v. Swanaset*, Nooksack Tribal Court Case No. NOO-C-96-004.  In the event of an election contest, or a dispute over a councilmember's "holdover" status, the Department of Interior lacks any authority and must defer to the determination of Nooksack law made by the Nooksack Tribal Court.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

58.     The Tribe has an election ordinance, the Tribe has an Election Board to resolve election disputes, and the Tribe has a Tribal Court to hear appeals of the Election Board.  Art. IV, Const., Title 62 (Election Ordinance), Title 10 (Tribal Court System and Rules).

59.     While the Tribal Constitution states that members shall run for four (4) year terms, Nooksack law permits holdover councilmembers to remain seated pending the next election.  April 7, 1997 Order, *Campion v. Swanaset*, No. NOO-C-96-004, at 2-3 (allowing the holdover of councilmembers for more than a year during an election dispute, and refusing to invalidate council action taken during that time, to provide for "the orderly transition of power of the government").

60.     In November, 2016, the time when Roberts had wrongly concluded that the Nooksack Tribal Council lacked a quorum, the Nooksack Tribal Court – the entity actually charged with interpreting Nooksack Tribal Law – held that the tribal council, as then-composed, had standing as the governing body of the Nooksack Tribe to pursue claims against third parties.  *Nooksack Indian Tribe v. Northwest Intertribal Court System*, 2016-CI-CL-006, Order Granting in part, Denying in Part, Plaintiff Nooksack Indian Tribe's Motion for Equitable Relief (November 17, 2016).

61.     Nooksack Tribal law with regard to holdover elected offices is consistent with the law of most jurisdictions in the United States.  It has long been established in constitutional democracies, in situations where a constitution is silent on the status of a holdover elected official, the official holds office until a successor is duly appointed and qualified.  *Effect of Hold Over Provisions on Vacancies in Office*, 19 WASH. & LEE L. REV. 252 (1962) (observing that "[i]n many jurisdictions, the incumbent in an elective public office is authorized to hold over after the expiration of the term, until his successor is duly qualified").

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

62.     Under Nooksack law, the Nooksack Tribal Council had authority to act and had a quorum from March, 2016 to the January 21, 2017 election and swearing in of new Council members filling all seats.

63.     On January 21, 2017 a general election was conducted in which all enrolled Nooksack tribal members over the age of 18 years, who were therefore qualified to vote under the Nooksack Constitution, voted to fill the seats held by the holdover Council members.  There were no challenges to the election results.  The results were certified by the duly-appointed Election Superintended, the new Council members were sworn in, and notice of the election results was timely provided to the Bureau of Indian Affairs.

**E.      The Arbitrary and Capricious Actions of the DOI, by and through former Principal Deputy Assistant Secretary Lawrence Roberts, Have Caused the Tribe Significant Harm.**

64.     There have been numerous adverse outcomes directly and proximately caused by Roberts' flawed conclusions and arbitrary, capricious and unlawful acts, taken as the agent of the defendants that have caused and will continue to cause the Tribe irreparable harm.

65.     The U.S. Department of Health and Human Services, Indian Health Service denied the Tribe' Proposed 2016 Annual Funding Agreement submittal, Resolution No. 16-162, with projected funding of **$2,440,500.00**, intended to be utilized to provide tribal members necessary medical services;

66.     The U.S. Department of Health and Human Services, Indian Health Service threatened to reassume, on a non-emergency basis, the health care programs, functions, services, and activities (PFSAs) operated by the Tribe under its 638 Agreement and associated Annual Funding Agreements;

67.     The U.S. Department of Housing and Urban Development, Northwest Office of Native American Programs, denied the Tribe's FY 2017 Indian Housing Plan submittal, Resolution No. 16-164.  The Indian Housing Plan is a prerequisite for the Tribe's Indian

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

1  Housing Block Grant, with a projected funding of **$847,957.00**, intended to be utilized to

2  provide tribal members affordable homes in safe and healthy environments;

3        68.     The U.S. Department of Interior, Bureau of Indian Affairs, withheld payment

4  for previously awarded Climate Change Grant Agreements in excess of **$400,000.00**;

5        69.     The U.S. Department of Interior, Bureau of Indian Affairs, withheld payment

6  for Calendar Year 2016 in excess of $1,500,000.00 awarded pursuant to the Tribe's Annual

7  Funding Agreements;

8        70.     The U.S. Department of Interior, Bureau of Indian Affairs, withheld any

9  payment for Calendar Year 2017, with total projected annual funding of approximately

10  $2,000,000.00 awarded pursuant to the Tribe's Annual Funding Agreements;

11        71.     The U.S. Department of Interior, Bureau of Indian Affairs, Northwest

12  Regional Office, denied the Tribe's contract modification request amending the Tribe's

13  previously approved 638 budget, Resolution No. 17-10, which prevented the Tribe from

14  allocating funds to necessary staff salaries;

15        72.     The Bureau of Indian Affairs, Northwest Regional Office, denied the Tribe's

16  request to approve a **$141,908.00** construction contract with P&P Excavating, LLC,

17  Resolution No. 16-156, which prevented the Tribe from executing the same and constructing

18  the False Creek Drainage Improvement Project;

19        73.     The Bureau of Indian Affairs, Northwest Regional Office, denied the Tribe's

20  contract modification request to extend a previously approved funding agreement by one (1)

21  year, Resolution No. 17-08;

22        74.     The Bureau of Indian Affairs, Northwest Regional Office, denied the Tribe's

23  contract modification request amending the Tribe's previously approved 638 budget,

24  Resolution No. 17-09, which prevented the Tribe from allocating **$22,000.00** to fund the

25  Tribe's driver's education program;

26

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

75. The Bureau of Indian Affairs, Northwest Regional Office, Division of Transportation notified the Tribe that no future construction projects may proceed in light of the Roberts opinion;

76. A Whatcom County Superior Court entered a ruling adverse to the Tribe, resulting in execution of a void judgment in the amount of **$2,790.15**, relying on the Roberts opinion as its basis;

77. The Washington State Recreation and Conservation Office has informally notified the Tribe that it cannot enter into grant agreements for several salmon restoration projects previously approved for funding, with total projected funding of in excess of **$5,500,000.00**;

78. The Washington State Recreation and Conservation Office has denied the Tribe access to previously approved funds made available in grant agreements in the amount of **$624,124.00**;

79. The Washington State Department of Ecology notified the Tribe that it will not enter into a Combined Clean Water Grant Agreement, with a projected funding of **$184,324.00**; and

80. The Bureau of Indian Affairs refused to reimburse the Tribe for Tribal Court staff training expenses in the amount of **$6,362.00**.

81. For each adverse outcome described above, the basis stated by the decision maker is the erroneous conclusion of Roberts that the Tribal Council lacked a quorum to carry out the business of the Nooksack Tribe.

82. Roberts' insertion of himself into Nooksack tribal politics is exactly the federal interference that federal courts have long forbade. *Wheeler v. U.S. Dept. of Interior*, 811 F.2d 549, 550-52 (10th Cir. 1987).

83. Roberts' conclusions were uninformed by any communications with the Tribe or its Chairman, are inconsistent with Nooksack law, and contradict the conclusions reached

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 16

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

by his own subordinates in the Northwest Regional Office and the Puget Sound Area Office, as well as previous decisions by the IBIA.  Roberts' conduct was arbitrary, capricious, contrary to law, and an abuse of discretion.

## V.      CAUSES OF ACTION

**A.      First Cause of Action:  Declaratory Relief, 28 U.S. Code § 2201(a)**

84.      The Tribe adopts and incorporates the facts alleged at ¶¶ 1 – 83 as though reasserted here in full.

85.      The district court is authorized to and should declare the rights and obligations of the parties and an actual controversy exists thereto. 28 U.S.C. § 2201.

86.      The unilateral actions of Roberts, acting as the then-ranking officer of the Bureau of Indian Affairs, in declaring the lack of a quorum under Nooksack Tribal law and refusing to recognize the acts of the duly-elected Tribal Council and its Chairman, were arbitrary, capricious, an abuse of discretion, and beyond the scope of the Bureau of Indian Affairs' authority.

87.      Roberts' letters, which were released to the media and unrelated third parties prior to being delivered to the Tribe, unduly influenced other federal agencies, state agencies, and a Washington State Superior Court, and interferes with and threatens the ability of the Tribe to self-govern.

88.      The Tribe is entitled to a declaration by this Court that that at the time of the acts in question, the Nooksack Tribal Council was duly and validly elected pursuant to the Tribe's Constitution and By-Laws and the opinions of the Nooksack Tribal Court, and possessed a quorum under Nooksack law to conduct Tribal business.

89.      The Tribe is further entitled to a declaration by this Court that the current Nooksack Tribal Council was duly and validly elected pursuant to the Tribe's Constitution and must be recognized by the defendants as the governing body of the Nooksack Indian Tribe.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

90.     The Tribe is also entitled to a declaration by this Court that the acts of defendants, by and through Roberts as the ranking official of the Bureau of Indian Affairs, was arbitrary, capricious, an abuse of discretion, and beyond the scope of the agency's authority.

**B.     Second Cause of Action:  Injunctive Relief, 25 U.S.C. § 5331(a);
         28 U.S. Code §§ 2202, 1361**

91.     The Tribe adopts and incorporates the facts alleged at ¶¶ 1 – 83 as though reasserted here in full.

92.     The Tribe's ISDA contracts were approved for fiscal year 2016 and awarded as a matter of law and the Tribe was entitled to full funding thereunder including added contract support costs.  Defendants failed and refused to provide full funding.

93.     The defendants have failed and refused without a lawful basis to perform nondiscretionary, ministerial duties mandated by Congress, though the Tribe has demanded such action of defendants.

94.     The Tribe is entitled to injunctive relief in the form of an order compelling defendant Brown and the Northwest Region to reverse the decisions to withhold funds awarded in 2016 but not released, and the declination of funds for 2017; and compelling the Secretary to award and fund the Tribe's approved self-determination contracts.

**C.     Third Cause of Action:  Administrative Procedures Act, 5 U.S.C. §§ 701-706**

95.     The Tribe adopts and incorporates the facts alleged at ¶¶ 1 – 83 as though reasserted here in full.

96.     The Tribe litigated the content and process outlined within its Enrollment Ordinance in both the Tribal Court and the Tribal Court of Appeals for over a year prior to submitting the Ordinance to the Bureau for approval.

97.     The Tribe requested the Secretary of Interior to approve the Tribe's Enrollment Ordinance in 2014.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

98.     The agency has unreasonably delayed or denied action on the Tribe's Enrollment Ordinance, which has already been held by Nooksack Tribal Courts to be consistent with the Nooksack Constitution.  The agency's inaction has improperly interfered with the Tribe's right to define its own membership for tribal purposes.  The Court should compel the defendants to give the Bureau' approval of the Tribe's Enrollment Ordinance immediate effect, nunc pro tunc to November 17, 2015, the date of the Region's approval.

99.     The refusal of the defendants to recognize and acknowledge the duly-elected Chairman and Tribal Council as the governing body of the Nooksack Tribe is arbitrary, capricious, and contrary to law.  In situations of federal-tribal government interaction where the federal government must decide what tribal entity to recognize as the government, it must do so in harmony with the principles of tribal self-determination, and respect for Tribal law.

100.     An agency must act with the scope of its authority. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971).

101.     Lawrence Roberts, acting on behalf of and in the scope of his employment by the Department of Interior, unilaterally, arbitrarily and capriciously concluded that the Nooksack Tribal Council lacked a quorum, and refused to recognize the Tribal Council as the governing body of the Nooksack Tribe.  The Roberts letters are unlawful and must be set aside.

102.     Defendant Black has, through his acts and omissions, concurred with the arbitrary and capricious actions of the Department of Interior and the Bureau of Indian Affairs by failing or refusing to rescind the Roberts letters, recognize the Nooksack Tribal Council, and fully fund the Tribe's 638 contracts.

103.     Defendants Loudermilk, Speaks, and Teters have, through their acts and omissions, concurred with the arbitrary and capricious actions of the Department of Interior and the Bureau of Indian Affairs by failing to recognize the Nooksack Tribal Council, and fully fund the Tribe's 638 contracts.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

104.    Defendant Brown, acting on behalf of and in the scope of his employment by the Bureau of Indian Affairs, unilaterally, arbitrarily and capriciously and without notice to the Tribe nor compliance with 638 contracting regulations failed or refused to distribute 638 contract funds that were awarded to the Tribe for fiscal year 2016.  Brown's actions as a Senior Awarding Official were unlawful and must be set aside.

105.    The Court must compel the defendants to recognize the actions of the Nooksack Tribal Council, taken after March 24, 2016 and continuing to the present, as the valid and duly-elected governing body of the Nooksack Indian Tribe, and to take all steps necessary to rescind the Roberts letters.

106.    In declining to fund the Tribe's 638 contracts in June, 2016 without notice or opportunity to comment, based on Roberts erroneous conclusions regarding the Tribal Council, defendants violated agency regulations governing the denial or reduction of 638 contract funding.  Defendants' conduct, which was without observance of procedure required by law, was unlawful and must be set aside.

107.    The Court must compel defendants to fully fund the Tribe's 638 contracts, money that was unlawfully withheld or unreasonably delayed by the agency, and reverse any negative 638 contract funding decisions, including the denial of amendment requests, failure to provide amendment proposals to the Tribe, and failure to approve obligation of contract funds for construction projects, made based on Roberts' conclusions.

**D.    Fourth Cause of Action:  25 U.S.C. § 5331(a); All Writs Act 28 U.S.C. §1651(a)**

108.    The Tribe adopts and incorporates the facts alleged at ¶¶ 1 – 83 as though reasserted here in full.

109.    Pursuant to the ISDA, federal courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this chapter or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a

COMPLAINT FOR INJUNCTION, WRIT OF MANDAMUS, DECLARATORY JUDGMENT, AND OTHER RELIEF - 20

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

duty provided under this chapter or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding or to compel the Secretary to award and fund an approved self-determination contract).

110.    Pursuant to the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

111.    The Department of Interior's fiscal year 2016 appropriation included funds for the Tribe's 638 contracts.  The Tribe is informed and believes and so alleges that unless defendants retain and sequester fiscal year 2017 funds and unobligated fiscal year 2016 ISDA funds, there will not be money held by defendants to pay the Tribe the full funding, including contract support costs, to which it is entitled under 25 U.S.C. § 5325(a).

112.    The defendants do not possess the discretion to avoid discharging the duties to the Tribe that Congress intended and requires them to perform.

113.    The Court should compel the Secretary of Interior to immediately segregate and hold fiscal year 2017 funds and unobligated fiscal year 2016 funds to pay the Tribe the full amounts necessary for the ISDA contracts for those years, including contract support costs.

114.    The Court should compel defendants Black, Loudermilk, Speaks, Teters, and Brown to immediately release to the Tribe the fiscal year 2016 funds Brown unlawfully withheld from the Tribe.

E.      Fifth Cause of Action:  Money Damages, 25 U.S.C. § 5331(a)

115.    The Tribe adopts and incorporates the facts alleged at ¶¶ 1 - 83 as though reasserted here in full.

116.    The acts and omissions of the defendants have caused and will continue to cause significant harm to the Tribe in the form of unfunded 638 programs, disruption of

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 21

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

1   essential governmental services provided by the Tribe to its members, and interference with

2   the Tribe's self-governance.

3       117.    The acts and omissions of the defendants have directly and proximately

4   caused money damages to the Tribe in an amount to be proven at trial, but at least

5   **$13,669,965** in lost grants and 638 contract funds.

6       118.    The Court should enter a judgment against the defendants, in the Tribe's

7   favor, in the amount of money damages arising under the Tribe's 638 contracts.

8                              **PRAYER FOR RELIEF**

9       WHEREFORE, the Tribe respectfully requests that this Court enter judgment in their

10  favor and against the defendants as follows:

11      (1)     A declaration that the Nooksack Tribal Council was at all material times the

12  valid and duly elected governing body of the Nooksack Indian Tribe, in possession of a

13  quorum and authorized to carry out the business of the Tribe;

14      (2)     A declaration that the opinion of then-Principal Deputy Director Lawrence

15  Roberts contained in his letters of October 17, 2016, November 14, 2016, and December 23,

16  2016 refusing to recognize the actions of the Nooksack Tribal Council after March, 2016

17  constitutes an arbitrary and capricious action by the defendants, in excess of the agencies'

18  authority and unsupported by law;

19      (3)     An order compelling the defendants to take all necessary steps to rescind the

20  letters issued by former Principal Deputy Assistant Secretary Lawrence Roberts, and to

21  notify all agencies and persons with whom Mr. Roberts' determination was shared that the

22  determination was erroneous and is without force or effect;

23      (4)     An order compelling the defendants to fully fund contracts awarded to the

24  Tribe under the Indian Self-Determination and Education Assistance Act, Public Law 93-

25  638.  Defendants have a non-discretionary duty owed to the Tribe to provide required

26  funding for the awarded contracts;

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 22

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460

1    (5)    An order compelling defendant Brown immediately to release wrongfully

2  withheld 638 contract funds from FY 2016 and FY 2017 to the Tribe;

3    (6)    A money judgment in the Tribe's favor in an amount equal to the lost grants

4  and 638 contract funds, but no less than **$13,669,965**;

5    (7)    An award of legal fees and costs pursuant to 28 U.S.C. § 2412; and

6    (8)    Such other and further relief as the Court deems just and equitable.

7  Dated this 13th day of February, 2017.

8

9                              SCHWABE, WILLIAMSON & WYATT, P.C.

10

11                      By:  /s/ Connie Sue Martin
                              Connie Sue Martin, WSBA #26525
12                            csmartin@schwabe.com

13                      By:  /s/ Jamila A. Johnson
                              Jamila A. Johnson, WSBA #39349
14                            jajohnson@schwabe.com
                              1420 Fifth Ave., Suite 3400
15                            Seattle, WA 98101
                              Telephone: 206.622.1711
16                            Facsimile: 206.292.0460

17                      OFFICE OF THE TRIBAL ATTORNEY
                        NOOKSACK INDIAN TRIBE
18

19
                        By: /s/ Rickie Wayne Armstrong
20                           Rickie Wayne Armstrong, WSBA #34099
                             rarmstrong@nooksack-nsn.gov
21                           5048 Mt. Baker Hwy
                             P.O. Box 157
22                           Deming, WA 98244
                             Telephone: 360-592 4158 Ext. 1009
23                           Facsimile: 360-592-2227

24
                             *Attorneys for Plaintiff*
25

26

COMPLAINT FOR INJUNCTION, WRIT OF
MANDAMUS, DECLARATORY JUDGMENT, AND
OTHER RELIEF - 23

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
City Centre
1420 5th Ave., Suite 3400
Seattle, WA  98101
Telephone 206.622.1711  Fax 206.292.0460