THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| THE NOOKSACK INDIAN TRIBE, | CASE NO. C17-0219-JCC |
|---|---|
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| RYAN K. ZINKE, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Plaintiff the Nooksack Indian Tribe's motion for preliminary injunction (Dkt. No. 19) and Defendants' cross-motion to dismiss (Dkt. No. 26). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Defendants' motion to dismiss and DENIES Plaintiff's motion for preliminary injunction as moot for the reasons explained herein.

## I. BACKGROUND

This section summarizes the facts as set forth in Plaintiff's complaint, as is appropriate on a motion to dismiss. It also summarizes and cites declarations, affidavits, and other material properly before this Court, as appropriate on a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(d); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Plaintiff the Nooksack Indian Tribe brought this action against Defendants, collectively the leadership of the Department of the Interior (DOI) and Bureau of Indian Affairs (BIA), on

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS
PAGE - 1

February 13, 2017. This case arises out of the same set of facts as a related case also before this Court, *Rabang v. Kelly*, C17-0088-JCC.

Since 2007, Plaintiff has been a party to 638 contracts with the DOI and BIA, entered into pursuant to the Indian Self-Determination and Education Assistance Act. (Dkt. No. 1 at ¶ 28.) Plaintiff alleges "under the terms of these contracts, the defendants fund the Tribe to provide programs, functions, services, or activities of the [DOI] for the benefit of Indians because of their status as Indians." (*Id.*) Plaintiff brings this action partially "to compel the defendants to fully fund contracts awarded to the Tribe under the Indian Self-Determination and Education Assistance Act." (*Id.* at ¶ 1.)

However, the purported disenrollment of hundreds of Nooksack tribe members in late 2016 and the recent tribal government changes, all completed when the Nooksack Indian Tribal Council lacked a quorum, are fundamental underlying facts in this action. By way of background, the Nooksack Indian Tribal Council is the governing body of the Tribe and is composed of eight members. (Dkt. No. 20 at 10.) Five members constitute a quorum on the Council. (*Id.* at 18.) In December 2012, the Chairman of the Nooksack Indian Tribal Council, Robert Kelly, "became aware of the possibility of erroneous enrollments" in the Tribe. (Dkt. No. 30 at ¶ 6.) On June 21, 2013, Nooksack Indian voters approved a membership requirement change to the Nooksack Constitution proposed by the Council. (Dkt. No. 1 at ¶ 31.). The change makes membership more stringent, requiring "at least one-fourth (1/4) degree Indian blood." (Dkt. No. 20 at 8.) The change was challenged in the Nooksack tribal courts and upheld. (*See* Dkt. No. 1 at ¶¶ 32–35.) However, the membership criteria change is currently before the DOI's Interior Board of Indian Appeals for approval. (*Id.* at ¶ 41.)

In March 2016, the Nooksack Indian Tribal Council scheduled a general election to fill three council seats whose terms were set to expire on March 24, 2016. (*Id.* at ¶ 42.) However, "the Tribe delayed the election, and the three Council members retained their seats as holdovers pending the election of their replacements." (*Id.*) Mr. Kelly alleges the Council postponed the

election "in the interest of providing stability to the Tribe's government and previous security concerns and threats of violence associated with disenrollment protests." (Dkt. No. 30 at ¶ 8.) Defendants allege the Council postponed the election for the three seats "until after disenrollment proceedings against the 306 prospective disenrollees were complete." (Dkt. No. 26 at 7.) Regardless of the reason for cancelling the 2016 election, as of March 24, 2016, only three of eight Council members occupy seats whose terms have *not* expired. (Dkt. No. 26 at 7 n.6.; Dkt. No. 20 at ¶ 9; Dkt. No. 38 at ¶ 14.) Therefore, Defendants allege the Council has been acting without a quorum since March 24, 2016. (Dkt. No. 26 at 3, 7.) The Court will refer to the Council group, as composed after March 24, 2016, as the holdover Council for clarity.

On March 28, 2016, the holdover Council terminated Nooksack Tribal Court Chief Judge Susan Alexander. (Dkt. No. 15 at ¶ 7; Dkt. No. 26 at 7.) Raymond Dodge, Plaintiff's former in-house counsel, replaced Ms. Alexander. (*Id.*) Thereafter, the Nooksack Tribal Court allegedly began refusing to act on complaints challenging the legality of the holdover Council's actions. (Dkt. No. 15 at ¶¶ 7–10.)

Conflict within the Nooksack tribal judiciary after March 24, 2016, is illustrated by the efforts of private law firms, including counsel for Intervenors 271 Nooksack Tribal Members, challenging their alleged disbarment from the Nooksack tribal courts. In an order dated September 21, 2016, the Nooksack Court of Appeals described as follows:

> As is well-known to those familiar with this case, the Plaintiffs[, private law firms,] have sought a review of this [disbarment] process before the Tribal Court, but the court clerk returned their pleadings and refuses to accept any filings from them. . . . This Court has already issued a mandatory injunction that the court clerk accept their pleadings and other filings. Moreover, when this order was ignored, we issued an order finding the court clerk in contempt. When this contempt was not corrected, we ordered the Police Chief to arrest the court clerk. When the Police Chief refused to enforce the Court's order to arrest the court clerk, we held the Police Chief in contempt. . . . *Notwithstanding our efforts, the orders of this Court have been unlawfully ignored and the rule of law on the reservation, at least within the scope of this case, has completely broken down.*

(Dkt. No. 15 at 51) (emphasis added).

On August 8, 2016, Stanley Speaks, the Northwest Regional Director of the DOI, sent a

letter to Nooksack tribal members who had asked him to "intervene and conduct a supervised, in-person, in-secret election." (Dkt. No. 21 at 13.) Director Speaks declined, and responded that the "Nooksack Constitution does not require the Secretary to conduct or approve tribal council elections. . . . The Tribe has existing forums for conducting tribal business: an election board (during an election), tribal police, tribal court, and an appellate court system." (*Id.* at 13–14.)

On October 7, 2016, by Resolution 146a, the holdover Council purportedly created a new Nooksack Supreme Court. (Dkt. No. 15 at 69, ¶¶ 17–18.) Five members of the holdover Council filled the judicial positions. (*Id.*) On the petition of the "Nooksack Indian Tribe and its officers and Councilmembers," the Nooksack Supreme Court vacated 12 prior orders of the Nooksack Court of Appeals as "null and void." (*Id.* at 72–80.)

Between November 10, 2016, and November 22, 2016, Plaintiff and the holdover Council disenrolled "289 individuals who failed to demonstrate legally sufficient blood connections to the Tribe." (Dkt. No. 1 at ¶ 43.) As such, "the Tribe carried out the disenrollment proceedings using the procedures that had been approved by both the Nooksack Tribal Court of Appeals and the Secretary" of the Interior. (*Id.*) Allegedly, these disenrollment hearings were conference calls that lasted no more than ten minutes in length. (Dkt. No. 26 at 9 n.10.)

On October 17, 2016, Lawrence S. Roberts, then the Principal Deputy Assistant Secretary–Indian Affairs of the DOI (PDAS), issued a decision[1] stating,

> In rare situations where a tribal council does not maintain a quorum to take action pursuant to the Tribe's Constitution, the [DOI] does not recognize actions taken by the tribe. This is one of those exceedingly rare situations. Accordingly, I am writing to inform you and the remaining Council members that the [DOI] *will only recognize those actions taken by the Council prior to March 24, 2016, when a quorum existed, and will not recognize any actions taken since that time because of a lack of quorum.*

(Dkt. No. 21 at 15) (emphasis added). The decision continues that the "BIA stands ready to provide technical assistance and support to the Tribe to carry out elections open to 'all enrolled

---

[1] By referring to these letters as "decisions," the Court expresses no opinion as to whether these are final agency actions.

members of the Nooksack Tribe, eighteen years of age or over.'" (*Id.* at 16.)

On November 14, 2016, PDAS Roberts issued a second decision to the holdover Council, reiterating that pursuant to the

> Nation-to-Nation relationship, the [DOI] will not recognize actions taken by you and the current Tribal Council members without a quorum consistent with the Nooksack Tribe's Constitution. . . . Accordingly, until a Council is seated through an election consistent with tribal law . . . , we will not recognize any "referendum election" including the purported results posted on the Tribe's Facebook page on November 4, 2016, claiming to disenroll current tribal citizens. . . . This further includes any election results from the Tribal Council Primary Election scheduled for December 17, 2016, or the Tribal Council Regular Election scheduled for January 21, 2017.

(Dkt. No. 15 at 11; *see* Dkt. No. 1 at ¶ 46.)

On December 23, 2016, PDAS Roberts issued a third decision to the holdover Council. He reiterated the fact that the Nooksack Indian Tribal Council continues to operate without a quorum and "therefore lacks authority to conduct business on behalf of the tribe." (Dkt. No. 15 at 14; *see* Dkt. No. 1 at ¶ 46.) The decision continues,

> As we previously notified you, the actions by you and two members who have exceeded their term of office on the Tribal Council to anoint yourselves as the Tribe's Supreme Court were taken without a quorum and without holding a valid election consistent with the Tribe's constitution. . . . *Any actions taken by the Tribal Court after March 24, 2016, including so-called tribal court actions and orders, are not valid for purposes of Federal services and funding.*

(Dkt. No. 15 at 14) (emphasis added). Plaintiff alleges Defendants "failed or refused the Tribe's distribution of its previously-approved 638 contract funds" as a result of these three DOI decisions. (Dkt. No. 1 at ¶ 45.)

On January 21, 2017, Plaintiff and the holdover Council allegedly conducted a general election to fill the three seats held by the holdover Council members whose terms had expired. (Dkt. No. 21 at 6.) There were no challenges to the election results. (*Id.*) The results were "certified by the duly-appointed Election Superintended [sic], consistent with Nooksack law." (*Id.*) Still, there is no dispute that Plaintiff has not requested that government-to-government relations between the DOI and Plaintiff be restored in light of this election. In his November and

December 2016 decisions, PDAS Roberts indicated he did not view the scheduled 2017 election as legitimate. (Dkt. No. 15 at 11, 15.) Defendants maintain their disapproval of the holdover Council in their briefing, calling its conduct "abusive," and alleging the Council has "used its *de facto* control to systematically abridge the rights of a disfavored group of tribal members, thereby depriving them of their right to fully participate in and receive benefits under federal programs." (Dkt. No. 26 at 3.)

The holdover Council, on behalf of the Nooksack Indian Tribe, now moves the Court to enter a preliminary injunction enjoining Defendants from "(1) taking further steps to reassume responsibilities the Tribe performs for its enrolled members under its Public Law 638 contracts; (2) taking further actions based on three opinion letters written by [PDAS Roberts]; and (3) continuing to interfere with the Tribe's self-governance by refusing to acknowledge that the current, duly-elected members of the Nooksack Tribal Council are the Tribe's governing body." (Dkt. No. 19 at 1–2.) Defendants opposed the motion, and filed a cross-motion to dismiss, or in the alternative for summary judgment, arguing that the Court lacks jurisdiction over this case. (Dkt. No. 26.) Because Defendants challenge the Court's jurisdiction over this matter, the Court will consider the motion to dismiss first.

## II.  DISCUSSION

### A.  Motion to Dismiss Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction. Jurisdiction is a threshold separation of powers issue, and may not be deferred until trial. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). A motion to dismiss under Rule 12(b)(1) for lack of jurisdiction may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In reviewing a facial attack, the Court assumes all material allegations in the complaint are true. *Thornhill Publ'g Co. v. General Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979).

//

### B. Standing/Authority

Defendants' primary argument is that absent recognition from the DOI and BIA, the holdover Council lacks the authority to file and prosecute the action in this Court against the Secretary in the name of, and on behalf of, the Nooksack Indian Tribe. (Dkt. No. 26 at 5.) Plaintiff counters that Robert Kelly, the current Chairman of the holdover Council, has "delegated authority" to prosecute the Tribe's claims. (Dkt. No. 29 at 3–4; Dkt. No. 36 at 17–18.) Plaintiff also argues the three Councilmembers who retained their seats during the "period of delayed general elections" validly continued to occupy their seats as holdovers in accordance with Nooksack law. (Dkt. No. 29 at 4–9; Dkt. No. 36 at 16–17.) Essentially, Plaintiff argues this is an intra-tribal dispute and it is not for the federal government to adjudicate disputed tribal leadership. (Dkt. No. 36 at 12–15.)

The Supreme Court has "repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987). Unless surrendered by the tribe, or abrogated by Congress, tribes possess inherent and exclusive power over matters of internal tribal governance. *See Nero v. Cherokee Nation*, 892 F.2d 1457, 1463 (10th Cir. 1989); *Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir. 1983); *Timbisha Shoshone Tribe v. Kennedy*, 687 F. Supp. 2d 1171, 1185 (E.D. Cal. 2009). However, this is an exceedingly rare situation where the DOI and BIA have refused to recognize the Nooksack tribal leadership and its actions taken since March 24, 2016, and no Nooksack tribal leadership group is currently federally recognized.

The parties have framed the motion to dismiss issue as "standing." However, there is no dispute that the Nooksack Indian Tribe, the named Plaintiff in this action, would have standing to bring the claims asserted. The dispute is whether the group representing itself as the Tribe, the holdover Council, is *authorized* to initiate the action on behalf of the Tribe. "Though not a question of constitutional standing, that issue nonetheless implicates the subject matter jurisdiction of this Court." *Cayuga Nation v. Tanner*, 824 F.3d 321, 327 (2d Cir. 2016).

Specifically, the issue before the Court is whether, given the DOI's refusal to recognize the holdover Council's leadership, Plaintiff has the authority to bring this case on the Tribe's behalf.

A recent Second Circuit case is very instructive. In *Cayuga Nation*, two tribal groups vied for tribal leadership and the BIA recognized one over the other. The court had to decide whether this recognition affected the court's jurisdiction over claims brought by the recognized group. 824 F.3d at 325–27. The court acknowledged the tension between tribal sovereignty and BIA recognition. It decided that it lacked "jurisdiction to resolve the question of whether this law suit was properly authorized as a matter of *tribal law*." *Id.* at 328. The court declined to interpret tribal law and concluded "where the authority of the individual initiating the litigation on behalf of a tribe has been called into dispute, the only question we must address is whether there is a sufficient basis in the record to conclude, without resolving the disputes about tribal law, that the individual may bring a lawsuit on behalf of the tribe." *Id.*

The court then proceeded to address the BIA decisions in the record. Recognizing "deference to the Executive Branch is appropriate," the Second Circuit noted the "BIA has special expertise in dealing with Indian affairs, and we have previously indicated that the BIA's decision to recognize a tribal government" can be outcome determinative. *Cayuga Nation*, 824 F.3d at 328 (citing *Timbisha Shoshone Tribe v. Salazar*, 678 F.3d 935, 938–39 (D.C. Cir. 2012) (dismissing a lawsuit brought by one group on behalf of the tribe after the Executive Branch recognized a different group as the tribe's governing body); *Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 712–13 (2d Cir. 1998) (noting that the "BIA's determination that [an individual] does not represent the Nation may well moot plaintiffs' claims")). Ultimately, the Second Circuit held "a recognition decision from the BIA is sufficient for us to find that the recognized individual has the authority to initiate a lawsuit on behalf of a tribe." *Cayuga Nation*, 824 F.3d at 328. The Second Circuit concluded that deference to a BIA decision was appropriate and adopted the BIA decision's conclusion. *Id.* at 328–30. The Second Circuit also acknowledged that a BIA decision recognizing a tribal government entity "could in many

situations prevent tribes from vindicating their rights in federal court." *Id.* at 329–30. However, "[l]ike the BIA, which must determine whom to recognize as a counterparty to administer ongoing contracts on behalf of the Nation, the courts must recognize someone to act on behalf of the Nation to institute, defend, or conduct litigation." *Id.* at 330.

This holding is consistent with an Eighth Circuit decision where the court determined that a BIA recognition and decision is made only on "an interim basis" and once "the dispute is resolved through internal tribal mechanisms, the BIA must recognize the tribal leadership embraced by the tribe itself." *Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Miss. in Iowa*, 609 F.3d 927, 943 (8th Cir. 2010); *accord Winnemucca Indian Colony v. U.S. ex rel. Dep't of the Interior*, 837 F. Supp. 2d 1184, 1191 (D. Nev. 2011).

The Ninth Circuit's limited jurisprudence on the specific issue before this Court is also consistent with the cases above. *See Cloverdale Rancheria of Pomo Indians of Cal. v. Jewell*, 593 F. App'x 606, 609 (9th Cir. 2014) (holding, where plaintiffs were five members of a tribe seeking recognition as the tribe's leadership, that "Plaintiffs–Appellants are not entitled to act on behalf of a federally recognized 'Indian tribe,' however, because they are not the Tribe's recognized governing body"); *see also Robinson v. Salazar*, 838 F. Supp. 2d 1006, 1031 (E.D. Cal. 2012) ("Deference to the BIA determination is the preferred course of action."); *Winnemem Wintu Tribe v. U.S. Dep't of Interior*, 725 F. Supp. 2d 1119, 1133–34 (E.D. Cal. 2010) (holding that an unrecognized tribe could not bring claims because the court lacked authority to adjudicate entitlement to federal recognition).

These holdings reflect the guiding principle that, although the DOI must carefully consider tribal sovereignty, it ultimately has the power to manage "*all* Indian affairs" and "*all* matters *arising out of Indian relations*." 25 U.S.C. § 2 (emphasis added). The BIA "has both the authority and responsibility to interpret tribal law when necessary to carry out the government-to-government relationship with the tribe." *United Keetoowah Band of Cherokee Indians v. Muskogee Area Director*, 22 IBIA 75, 80 (1992).

Based on this line of cases, the Court concludes deference is owed to the DOI decisions and the holdover Council does not have authority to bring this case against the federal government in the interim period where the tribal leadership is considered inadequate by the DOI. There is a sufficient basis in the record to conclude this Plaintiff, the holdover Council, may not bring a lawsuit on behalf of the Tribe. The DOI refused to recognize the actions taken by the holdover Council since March 24, 2016. (Dkt. No. 15 at 8, 11, 15.) Moreover, the DOI has not recognized the Nooksack Indian Tribal Council allegedly elected in January 2017. (*Id.* at 11, 16.) Therefore, the decisions taken and the leadership in place after March 24, 2016, are not valid at this time and on an interim basis because the DOI or BIA have not recognized *any* Nooksack tribal leadership.

This holding is consistent with the Court's conclusion it has subject matter jurisdiction over the plaintiffs' claims in *Rabang v. Kelly*, C17-0088-JCC, Dkt. No. 62. There, the plaintiffs are allegedly disenrolled Nooksack tribe members bringing an action against the Nooksack tribal leadership, including the holdover Council members, in their individual capacities. *Rabang*, Dkt. No. 1. The Court defers to the DOI decisions in each case, but the respective parties in each informs the Court's subject matter jurisdiction. The plaintiffs in *Rabang* have authority to bring their personal claims, and the DOI decisions confer jurisdiction over potentially intra-tribal matters because the plaintiffs have a lack of adequate opportunity to challenge the Nooksack tribal court's jurisdiction. *Rabang*, Dkt. No. 62 at 10–11. Here, however, the holdover Council lacks authority to bring its claims on behalf of the Tribe because the DOI decisions decline to recognize the holdover Council. Therefore, the Court does not have jurisdiction over claims alleged by a party without authority to bring such claims.

The holdover Council's arguments why it has authority to bring its claims are curious. Plaintiff seems simultaneously to ask the Court to interpret Nooksack tribal law to find Mr. Kelly was delegated power and that Nooksack law recognizes the authority of holdover Councils, while also arguing that the Court cannot intercede into internal tribal disputes. (*See e.g.*, Dkt. No.

36.) Plaintiff cannot have it both ways. Moreover, this federal court cannot interpret tribal law. *See Cayuga Nation*, 824 F.3d at 328; *Goodface*, 708 F.2d at 339.

Plaintiff also relies on Director Sparks's letter indicating that the "Nooksack Constitution does not require the Secretary [of the Interior] to conduct or approve tribal council elections." (Dkt. No. 21 at 13–14; *see* Dkt. No. 19 at 8.) Plaintiff claims this means PDAS Roberts acted improperly by refusing to recognize the holdover Council. (Dkt. No. 19 at 8.) However, even if this was true, as decided above, the Court does not have jurisdiction to review challenges to DOI decisions brought by parties without authority.

Plaintiff also cites *Cayuga Nation* for the proposition that allowing Defendants "to defeat the Tribe on standing grounds by arguing that they do not recognize the Council . . . must not be permitted." (Dkt. No. 29 at 9.) However, *Cayuga Nation* holds that where the BIA recognizes specific entities as the tribal leadership, federal courts must do the same. 824 F.3d at 330. Logically, therefore, the converse must also be true: where the BIA refuses to recognize tribal leadership, federal courts must do the same. *See also Shenandoah*, 159 F.3d at 712–13; *Cloverdale*, 593 F. App'x at 609.

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 26) is GRANTED because the holdover Council does not have the authority to bring these claims on behalf of the Nooksack Indian Tribe. Therefore, this Court lacks jurisdiction.[2]

## III. CONCLUSION

These are very rare circumstances. The DOI found that the Nooksack Indian Tribal Council, currently existing as the holdover Council, lacks authority due to a lack of quorum. The DOI decisions stand during the interim until the DOI and BIA recognize a newly elected Nooksack Indian Tribal Council. This Court's lack of jurisdiction is not permanent or inflexible.

---

[2] Plaintiff also argues that the DOI and BIA decisions are final agency actions that can be reviewed by this Court. However, the Court need not decide whether or not final agency actions were made because the holdover Council lacks authority to bring its claims at this time.

If the DOI and BIA recognize Nooksack tribal leadership after new elections and the nation-to-nation relationship is resumed, the new tribal leadership would have authority to initiate an action against the federal government. The Court also acknowledges that this is a situation contemplated by *Cayuga Nation* where a BIA decision "prevent[s] tribes from vindicating their rights in federal court." 824 F.3d at 329–30. However, under this set of facts and with a clear lack of recognition from the DOI and BIA, the Court must decline jurisdiction.

Defendants' motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 26) is GRANTED. The holdover Council's claims are DISMISSED with prejudice. Plaintiff's motion for preliminary injunction is DENIED as moot. The Court directs the Clerk to CLOSE this case.

DATED this 11th day of May 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE